# Arnold & Porter

**John F. Hagan, Jr.**
+1 312.583.2370 Direct
John.Hagan@arnoldporter.com

September 21, 2020

The Honorable Lewis J. Liman
United States District Court for the
Southern District of New York
500 Pearl Street, Room 701
New York, NY 10007

> Re:  *Steak n Shake Inc. (f/k/a Steak n Shake Operations, Inc.) v. Wilmington Trust,*
> *National Association*, Case No. 1:20-cv-06096-LJL

Dear Judge Liman:

We write on behalf of our client, Wilmington Trust, National Association ("Wilmington"), and pursuant to Section 4.B of the Court's Individual Practices in Civil Cases (the "Individual Practices") to request that the Court compel plaintiff Steak n Shake Inc. (f/k/a Steak n Shake Operations, Inc.) ("Steak n Shake") to: (1) produce documents in response to Wilmington's Requests for Production no. 1, 3, 4, 7, 9, 10, 11, 12, 13, 14, 16, 19, 21, 22, 23, 24, 27, 28, 29, 30, 33, and 34 to which Steak n Shake has objected to and/or has not yet confirmed that it will produce even a single responsive document; (2) confirm when Steak n Shake will produce all documents responsive to Requests for Production no. 2, 5, 6, 8, 15, 17, 18, 20, 25, 26, 31, and 32 to which Steak n Shake has agreed to produce documents (but has nevertheless produced very little of substance); and (3) answer Wilmington's First Set of Interrogatories.  As set forth below in more detail, Wilmington has satisfied its meet-and-confer obligations here because, contrary to this Court's Individual Practices, Steak n Shake has failed to make itself available within 48 hours of Wilmington's request for a meet-and-confer conference.

As the Court will recall, on September 1, 2020, this Court denied Steak n Shake's emergency application for a preliminary injunction on the record.  During that conference, Steak n Shake's counsel requested expedited discovery and represented that: "I think we can make document discovery in two weeks.  I can't imagine there is [sic] any depositions that need to be taken, but we'll make anybody available that is needed at the end of that two weeks."  Ex. A, Sept. 1, 2020 Hr'g Tr. at 37:17-24.  Counsel for Steak n Shake also represented that: "I will endeavor to get him [*i.e.*, Wilmington's counsel] everything by Thursday [September 3] that he asked for and on Friday [September 4] he can report to the Court whether he has it or not."  *Id.* at 38:24-39:3.

On September 2, 2020, counsel for Wilmington sent Steak n Shake a list of "certain core materials that Steak n Shake should prioritize to provide in its planned document production" on September 3, 2020.  Ex. B, Sept. 2, 2020 Email.[1]

---

[1] Counsel for Wilmington also made it clear that: "Although the categories referenced below are among the highest priorities of the requests Wilmington has already reasonably made, Wilmington of course reserves all of its rights to continue to request: (i) whatever reasonable supplemental documentation is necessary to demonstrate Steak n Shake's

**Arnold&Porter**

The Honorable Lewis J. Liman
Page 2

On September 3, 2020, the Court issued an Opinion & Order (Ex. C, the "Order") explaining its reasoning for denying Steak n Shake's motion.  In the Order, the Court made clear that Section 6.06(b) of the Credit Agreement, dated March 19, 2014 (the "Credit Agreement") "does not require that Wilmington give a blank check on the assurance that the 6.06(b) requirements will be met" by Steak n Shake, but rather (*id.* at 21-23).

> [T]he scope of the documents and certifications that Wilmington may request to demonstrate compliance with Section 6.06(b) is not narrow as Steak n Shake suggests, but broad.  It includes documents that demonstrate compliance with all four conditions of Section 6.06(b) . . . That inquiry necessarily permits Wilmington to inquire into other dispositions of property and, with respect to such dispositions, and which section of the Credit Agreement permits such dispositions.  If Section 6 applies to a disposition, and that disposition does not satisfy another subsection of Section 6, then it is necessarily a disposition of property under Section 6.06(b) counting against the $50 million cap.

> Wilmington also may make reasonable requests for documents and certifications whether Steak n Shake's intended use of the proceeds of the real estate sales satisfies Section 2.10(c) . . . It also follows that where Steak n Shake has expressed an intent to use the proceeds to reinvest in its business, and not to prepay the Loans, and where there is basis to believe that some condition such as an Event of Default has occurred that would prevent Steak n Shake from using the proceeds to reinvest in its business, Wilmington may make reasonable inquiries.  It is not a potted plant.

On September 3, 2020, Steak n Shake produced 35 documents (642 total pages), a significant portion of which were copies of financial statements already available to Wilmington.  Ex. D, Sept. 3, 2020 Production Cover Letter.  During a September 4, 2020, telephone conference before the Court, counsel for Steak n Shake represented that this production was "massive" and that although it did not include any property appraisals, those would be provided to Wilmington "by the end of the week."  Ex. E, Sept. 4, 2020 Hr'g Tr. at 10:3-18.  Counsel for Steak n Shake indicated that an expedited schedule was necessary because Steak n Shake had signed a real estate sales agreement that closed on September 30, 2020.  *Id.* at 2:22-3:9.  The Court then entered a scheduling order setting a fact discovery deadline of October 16, 2020.  ECF No. 23.  Shortly following the conference, Steak n Shake agreed by email with Wilmington's proposal that both parties respond to written discovery within 14 days of service.  Ex. F, Sept. 4, 2020 Email.

On September 9, 2020, Wilmington served its First Set of Requests for Production and First Set of Interrogatories on Steak n Shake, all of which fall within the scope of reasonable discovery permitted by this Court's Order.  Ex. G, Sept. 9, 2020 Email (with enclosures).  In its cover email enclosing those requests, Wilmington told Steak n Shake that it had reviewed Steak n

---

compliance with Section 6.06 of the Credit Agreement; and (ii) any documents to which Wilmington would otherwise be entitled to in discovery."  *Id.*

# Arnold&Porter

The Honorable Lewis J. Liman
Page 3

Shake's September 3, 2020 production in detail and that Steak n Shake had not yet complied with many of Wilmington's "highest priority" requests from September 2. *Id.* Counsel for Wilmington detailed in that email with great specificity precisely which materials remained missing. *Id.* Steak n Shake has never responded to or addressed the substance of that e-mail.

On September 16, 2020, Steak n Shake produced another 18 documents (290 pages in total), all of which relate exclusively to certain details of the proposed sale of real property. Remarkably, however, even as to that very limited scope of information, Steak n Shake's production did not include all appraisal information that counsel for Steak n Shake represented to the Court twelve days earlier would be produced forthwith "by the end of the week." With respect to any other valid topic of discovery, including the many related-party transactions involving Steak n Shake and Biglari Holdings Inc., Steak n Shake's latest production is not responsive. Ex. H, Sept. 16, 2020 Steak n Shake Production Cover Letter. Later on September 16, 2020, Steak n Shake served its responses and objections to Wilmington's discovery requests. Ex. I, Sept. 16, 2020 Email. Steak n Shake objected to all of Wilmington's Requests for Production, indicating that it would only "meet-and-confer" concerning—without agreeing to produce even a single document responsive to—well over half of Wilmington's requests. In fact, Steak n Shake agreed to produce documents in response to only twelve requests and, even with respect to those requests, it has not provided the requested information despite its alleged need for "expedited discovery." *Id.* Steak n Shake has not yet answered Wilmington's interrogatories and stated that it would answer them "by such time as required under the Federal Rules of Civil Procedure, and consistent with the Court' orders."

Consistent with Rule 37(a)(1) and Section 4.B of the Individual Practices, on September 17, 2020 at 10:28am ET, counsel for Wilmington requested that the parties meet-and-confer "ASAP" concerning Steak n Shake's responses and objections Ex. J, Sept. 17, 2020 Email. Steak n Shake responded that it would propose a time for a meet-and-confer call, likely the following day. Despite that promise (and subsequent emails concerning other topics), Steak n Shake never proposed even a single time of availability within this Court's required 48 hour period following Wilmington's request. Due to that failure, Wilmington has satisfied its meet-and-confer obligations in good faith under Section 4.B and the issues raised here are ripe for determination.

To date in discovery, Steak n Shake has produced just 53 documents and the vast majority of Wilmington's document requests and the answers to all of Wilmington's interrogatories remain outstanding. Wilmington is bringing this dispute to the Court's attention now because: (1) Wilmington's document requests and interrogatories all seek plainly discoverable information consistent with the Court's September 4 Order; (2) fact discovery is set to close shortly on October 16, 2020; and (3) Steak n Shake has a history of stonewalling Wilmington's reasonable requests for documentation and a repeated practice of overpromising and underdelivering here, including with respect to representations and promises made to this Court on the record.

We are available at Your Honor's earliest convenience to discuss the issues raised above.

**Arnold&Porter**

The Honorable Lewis J. Liman
Page 4

Respectfully Submitted,

*/s/* John F. Hagan, Jr.

cc:      All Counsel of Record (by ECF)